UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JO ANN BARKER,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　　Defendant. | Case No. CV 05-5766-JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.　SUMMARY**

On August 11, 2005, plaintiff Jo Ann Barker ("plaintiff"), proceeding *pro se*, filed a lengthy Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.[1]  The parties have filed a consent to proceed before a United States Magistrate Judge.

///

---

[1] The Complaint includes a 199-page typewritten document with the footer "Complaint SSA," wherein plaintiff purports to allege, inter alia, First, Fifth, Sixth, Eighth and Fourteenth Amendment violations associated with the Commissioner's denial of benefits.  The Court has read and considered the entirety of plaintiff's Complaint as relevant to adjudicating the parties' cross motions for summary judgment in accordance with sentence four of 42 U.S.C. § 405(g).

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions and plaintiff's reply (filed on August 14, 2008), under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; February 27, 2008 Case Management Order, ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed sufficiently to develop the record concerning plaintiff's possible mental impairments.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about March 2, 2002, plaintiff filed an application for Supplemental Security Income ("SSI") benefits. (Administrative Record ("AR") 513-19).[2]

---

[2] Plaintiff filed a prior application for SSI benefits on or about May 7, 1991. (AR 68-71). Plaintiff asserted that she had been disabled since 1989 based on: "back problem[s], bad hip, [and] pain in bones." (AR 68). Notwithstanding the fact that plaintiff complained solely of physical impairments, the Administration found plaintiff disabled as of April 8, 1991, based on a "severe and disabling psychiatric impairment," and awarded benefits. See AR 292-96 (adopting consultative examiner's opinion that plaintiff suffers from disabling paranoid schizophrenia (AR 170-72)).

Following a periodic review of plaintiff's continuing entitlement to receive benefits, the Administration terminated benefits as of September 1, 1997, for insufficient medical evidence to establish a diagnosis. (AR 64-67, 300-17, 440-48, 486-89). Plaintiff assertedly had refused to attend a disability hearing and to submit to mental and physical examinations. (AR 312). Plaintiff appealed the decision. (AR 318-20, 340-89). Plaintiff "waived" appearance at an administrative hearing scheduled for December 15, 1998. (AR 449-56). On February 18, 1999, an ALJ affirmed the cessation of benefits, based on plaintiff's refusal to cooperate in obtaining current medical evidence. (AR 64-67, 486-89). On February 3, 2000, the Appeals Council denied review. (AR 46-48). Plaintiff did not seek review of the cessation of benefits in federal court.

(continued...)

Plaintiff asserted that she became disabled on March 26, 1994, due to "carpal tunnel syndrome, chronic fatigue, post-traumatic shock syndrome, neck & lower back pain, [and] distal nerve root compression." (AR 513, 516). When the Administration denied plaintiff's application initially and on reconsideration (AR 490-501), plaintiff requested a hearing before an ALJ. (AR 501). On November 6, 2003, an ALJ examined the medical record and heard testimony from plaintiff (who was then represented by counsel). (AR 828-55).

On February 19, 2004, the ALJ determined that plaintiff was not disabled from the date of the 2002 application through the date of the decision. See AR 33-43 (citing 20 C.F.R. § 416.335 (providing that the earliest month for eligibility for benefits is the month following the filing of an application)). The ALJ did not consider plaintiff for SSI benefits for any time prior to the current application in issue. (AR 34). For the current application, the ALJ found: (1) plaintiff suffered from the following severe impairments: "loss of distal phalanx of the right third finger, chronic obstructive pulmonary disease, a back disorder, and depression" (AR 35); (2) plaintiff's impairments did not meet or medically equal one of the listed impairments (AR 35); (3) plaintiff retained the residual functional capacity to perform a wide range of medium work (AR 40);[3] (4) plaintiff had no past

---

[2](...continued)

Plaintiff was not represented by counsel in the foregoing proceedings. Notes from the time of the administrative review indicate that plaintiff refused to cooperate in updating the medical record due to plaintiff's purported paranoia. See AR 321; see also AR 331 (referencing paranoia); AR 473 (report of contact noting plaintiff's refusal to submit forms); AR 479 (report of contact noting plaintiff's refusal to undergo psychiatric exam); AR 482 (report of contact noting plaintiff's dislike of signing medical releases).

[3]The ALJ determined that plaintiff: (i) could lift and/or carry 50 pounds occasionally and 25 pounds frequently; (ii) could stand and/or walk about six hours out of an 8-hour workday; (iii) could sit, with normal breaks, for a total of about six hours in an 8-hour workday; (iv) could perform simple repetitive tasks; and (v) had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and moderate deficiencies of concentration,

(continued...)

relevant work (AR 41); and (5) application of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids") supported the existence of other jobs in the national economy that plaintiff could perform (AR 41-42). With respect to the effect of plaintiff's non-exertional limits on the application of the Grids, the ALJ stated:

> [T]he claimant does not have nonexertional impairments that would significantly erode the occupational base. To illustrate, the claimant's ability to perform simple repetitive and routine tasks is not substantially impaired. Thus, the claimant's nonexertional limitations have very little effect on the wide range of work that the claimant can perform.

(AR 41) (citing Social Security Rulings ("SSR") 83-13, 83-14, and 85-15).

The Appeals Council denied plaintiff's application for review. (AR 15-17).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

---

[3](...continued)
persistence or pace, but showed no indication that she ever had an episode of decompensation. (AR 40, 42).

|     |                                                                                      |
| --- | ------------------------------------------------------------------------------------ |
| (1) | Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two. |
| (2) | Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three. |
| (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. |
| (4) | Does the claimant possess the residual functional capacity to perform her past relevant work?[4] If so, the claimant is not disabled. If not, proceed to step five. |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the

---

[4] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

5

region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Grids.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

### IV. DISCUSSION

While plaintiff's *pro se* pleadings are not a model of clarity, plaintiff, among other things, takes issue with the ALJ's development of the medical record. Plaintiff asserts that the ALJ did not adequately develop the record of her

6

impairments to support the Administration's ultimate finding of non-disability at Step 5 of the sequential evaluation process.  See Plaintiff's Motion, pp. 21-22. The Court agrees that the ALJ should have further developed the record.

### A.  The Record Concerning Plaintiff's Mental Condition

The record concerning plaintiff's mental condition for the time period relevant to her current benefits application is scant.  In a "Disability Report - Field Office" dated February 6, 2002, it was observed that "[plaintiff's] behavior is at times illogical, incoherent & hostile.  She exhibits a great need for psychiatric treatment."  (AR 568).  In a "Reconsideration Disability Report" dated August 23, 2002, it also was observed:

> While [plaintiff] is of sound mind most of the time, there are times in which her responses and demeanor does [sic] not fall into what most people will consider appropriate.  She can become very combative (verbally) and sarcastic, to the point of being childish.

(AR 589).  Despite plaintiff's protestations that she did not have any mental health problems, the interviewer noted that plaintiff would "greatly benefit from thorough psychological testing."  (AR 589).

Plaintiff underwent testing when state agency psychiatrist, Dr. Sohini Parikh, evaluated plaintiff on May 25, 2002.  (AR 744-49).  Dr. Parikh did not review any of plaintiff's medical records or prior psychological evaluations.  (AR 744).  Dr. Parikh diagnosed plaintiff with depressive disorder, not otherwise specified, noting "schizophrenia-paranoia, by history (she is not medicated or in treatment)," and assigned her a Global Assessment Functioning ("GAF") score of 60.[5]  (AR 748).  Dr. Parikh opined that plaintiff "did not seem to have any

---

[5] The GAF scale is used by clinicians to report an individual's overall level of functioning.  "A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)."  Hoffman v. Halter, 140 F. Supp. 2d 1056,
(continued...)

7

paranoia," but noted that psychological testing would be beneficial to "rule out psychosis versus depression." (AR 749). Dr. Parikh noted no mental impairments. (AR 749).[6]

In finding plaintiff not disabled, the ALJ adopted Dr. Parikh's opinion that plaintiff suffered from severe depression. (AR 35, 39-40). Unlike Dr. Parikh, however, the ALJ assigned limitations in plaintiff's ability to concentrate and carry out complex tasks, given plaintiff's reported inability to perform serial sevens beyond the number 93. (AR 39-40). The ALJ limited plaintiff to simple, repetitive and routine tasks with mild restrictions in plaintiff's activities of daily living and in maintaining social functioning, and moderate deficiencies in concentration, persistence, or pace. (AR 40). In assessing these limits, the ALJ reported that he had considered plaintiff's medical records dated prior to the 2002 application, but gave them less weight. (AR 40).[7] Ultimately, the ALJ relied on

---

[5](...continued)
1059 n.10 (C.D. Cal. 2001) (quoting from American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th Ed. 1994)) (quotations omitted).

[6] A "Psychiatric Review Technique" form dated June 7, 2002, notes that plaintiff's mental impairments are not severe. (AR 759).

[7] As stated in note 2, supra, in granting plaintiff benefits as of 1991, a prior ALJ found that plaintiff suffered from disabling paranoid schizophrenia. (AR 292-96). That ALJ relied on psychiatric evaluations by Dr. Bruce Bielinski, who evaluated plaintiff in connection with a worker's compensation claim. See AR 598-605 (Dr. Bielinski's reports). Dr. Bielinski initially diagnosed plaintiff with paranoid schizophrenia, reporting:

> This patient is certainly in need of psychiatric help and it is at this time moot whether or not there are vocational issues assigned to the exacerbation or initiation of her psychiatric condition. Certainly her incomprehensible evaluation today would make it difficult to determine this. Nor will her level of cooperation in the future assist in the separation of industrial issues versus non-industrial issues. It is indeed doubtful that this patient will volunteer for psychiatric treatment which she so necessarily requires at this time. The probability for schizotypal personality exists in this particular case.

(continued...)

the Grids to find that plaintiff can work. (AR 41).

### B. The ALJ Failed Adequately to Develop the Record Concerning Any Mental Limitations that Plaintiff May Have

Based on the record before the ALJ, the Court finds that the ALJ erred by failing to develop further evidence of plaintiff's mental limitations. The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process. Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and fairly develop record and to assure that claimant's interests are considered). The ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). This duty applies whether or not the claimant is represented, and is "heightened where the claimant *may* be mentally ill and thus unable to protect her own interests." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (emphasis added) (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992) ("The duty to provide an adequate record is of extraordinary importance when a person once found eligible for S.S.I. benefits may be in danger of losing them because he is too ill to act in his own best interests.")); see also DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) ("In cases of mental impairments, this duty [to develop the record] is especially important.").

Although the ALJ here did not expressly find that evidence of plaintiff's mental condition was ambiguous or insufficient to assist in determining disability, Dr. Parikh's equivocal opinion that plaintiff "did not seem" to be suffering from

---

[7](...continued)
(AR 605). Upon reviewing plaintiff's medical records, Dr. Bielinski changed his diagnosis to "organic brain syndrome, not otherwise specified, atypical in nature, related to the automobile accident for which [plaintiff] received treatment prior to her working for Unishield." Dr. Bielinski also diagnosed plaintiff with post-concussion syndrome. (AR 602). Dr. Bielinski opined that plaintiff was permanent and stationary. (AR 605).

9

paranoia and would benefit from further psychological testing to rule out psychosis versus depression, triggered the ALJ's duty to develop the record on this point in light of the Administration's prior disability determination. Hilliard v. Barnhart, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (A claimant "need only 'raise a suspicion' about his [mental] impairment in order to trigger the ALJ's duty to develop the record.") (quoting Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987)); see also Harris v. Barnhart, 219 F. Supp. 2d 966, 974-75 (E.D. Wis. 2002) (finding ALJ failed in duty to develop the record where claimant had previously been found disabled based on a personality disorder and testified about depression at his administrative hearing, where the ALJ took no steps to develop the record to determine how the claimant's alleged depression and/or personality disorder currently impacted his residual functional capacity).

As the ALJ erroneously failed adequately to develop the record concerning plaintiff's mental condition, the current record provides an insufficient basis upon which to determine the extent to which plaintiff's mental condition may have impacted her ability to work. The Court therefore cannot deem the ALJ's error harmless. Accordingly a remand is appropriate to enable the ALJ to develop the record regarding plaintiff's mental condition and to assess whether, in light of the fully developed record regarding plaintiff's mental condition, plaintiff is able to work.[8]

---

[8] The Court notes that plaintiff's case is distinguishable from the recent unpublished decision in Clark v. Astrue, 2009 WL 902284 (9th Cir. Mar. 25, 2009), rejecting a claim that the ALJ failed adequately to develop the record. On appeal, Clark asserted that the ALJ failed adequately to develop the record concerning the Clark's physical complaints, where: (1) Clark had filed for benefits relating only to mental health issues; (2) Clark's attorney at the administrative hearing disclaimed a physical basis for awarding benefits; and (3) Clark's medical record did not reflect any complaints of disabling physical problems. Id. at *1. The Ninth Circuit found the ALJ had no duty to further develop the record, concluding that the existing record was adequate to evaluate Clark's claims and that there was no ambiguity in the evidence concerning Clark's alleged mental health issues. Id.

(continued...)

## C. Additional Issues on Remand

The Court notes that on remand, an issue may arise as to whether plaintiff's non-exertional limitations are sufficiently severe to render reliance on the Grids inappropriate. As summarized above, when a claimant establishes that she cannot perform her past relevant work, "the burden shifts to the [Administration] to show that the claimant has the capacity to perform other work and that such other work exists in the national economy." Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985). The Administration can meet its burden by relying on the Grids to determine whether a claimant can work, where the claimant's physical ability, age, education, and work experience match the Grids. See Heckler v. Campbell, 461 U.S. 458, 461-62 (1982); Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007); see also SSR 83-14, 85-15 (discussing how Grids may apply as framework where claimant has non-exertional limitations). The Administration can use the Grids where a claimant asserts both exertional and non-exertional impairments. Hoopai, 499 F.3d at 1075. The Grids do not apply, however, where a claimant's non-exertional impairments significantly limit his or her range of work. In that instance, the Administration must obtain vocational expert testimony to identify specific jobs within the claimant's abilities. See Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Hoopai, 499 F.3d at 1075 ("[T]he [G]rids are inapplicable when a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional

---

[8](...continued)
Here, unlike in Clark, the ALJ found that plaintiff suffered from a severe mental impairment notwithstanding her insistence to the contrary. Given the ALJ's finding that plaintiff suffered from severe depression, and the prior administrative decision relating to the 1991 application finding that plaintiff suffered from disabling paranoid schizophrenia, the ALJ had a duty to develop the record. The fact that plaintiff did not assert that her mental condition was in issue is not dispositive, since the Administration had evidence that plaintiff may be suffering from a mental impairment. See 20 C.F.R. § 416.912(a) (Administration "will consider only impairment(s) [a claimant says she has] or about which [the Administration] receive[s] evidence").

1  limitations.").⁹

2      Here, the ALJ concluded that plaintiff's nonexertional limitations the ALJ
3  found to exist would have very little effect on the wide range of work that plaintiff
4  could perform, and did not consult with a vocational expert. (AR 41). While the
5  Court questions the ALJ's reliance on the Grids to find that plaintiff can work in
6  light of the mental limitations the ALJ found to exist, the Court not decide whether
7  the ALJ erred in relying on the Grids in remanding the matter for failure
8  adequately to develop the record.

9      A second issue that may arise on remand is whether the Administration
10 should reopen plaintiff's prior application. Much of plaintiff's motion for
11 summary judgment takes issue with the Administration's prior decisions relating
12 to her 1991 application for supplemental security income. See Plaintiff's Motion,
13 pp. 11-16 (discussing proceedings related to the prior application), 23-27
14 (requesting relief related to the prior application). The Court's decision today
15 reviews only the Administration's decisions with respect to the 2002 application.
16 Applicable regulations require that a claimant request a reopening of an ALJ's
17 decision directly from the Appeals Council within 12 months of the Council's
18 denial of review of that application. See 20 C.F.R. § 416.1488(a). Because
19 plaintiff failed to do so, the ALJ's cessation decision has become final for

---

⁹Lounsburry v. Barnhart, 468 F.3d 1111, 1117 (9th Cir. 2006), explains:

> [T]he grids are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of a job ("exertional limitations"); they may not be fully applicable where the nature of a claimant's impairment does not result in such limitations ("non-exertional limitations"). The reason for this limitation on the grids' application is that, despite having the residual functional capacity to perform a full range of unskilled occupations at a given exertional level, a claimant may not be able to adjust to these jobs because of non-exertional limitations.

(internal citations omitted); see also Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1223 n.4 (9th Cir. 2009) (discussing same).

purposes of these proceedings. See 20 C.F.R. § 416.1487(a).  The Court therefore lacks jurisdiction to review the earlier decision.  See Brodie v. Commissioner of Social Security, 267 Fed. Appx. 662, 664 (9th Cir. 2008) (unpublished decision) (citing Udd v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001)).[10]

However, the Court notes that because plaintiff was pursuing benefits on the prior application without counsel and may have had a mental incapacity that prevented her from understanding the Administration's review process, on remand it may be appropriate for the Administration, in accordance with Social Security Ruling 91-5p, to review whether there is cause to reopen the prior application for further administrative action to determine whether plaintiff's mental impairment prevented her from appropriately supplementing the record for disability review. See SSR 91-5p; see also Udd, 245 F.3d at 1099 ("[w]here a claimant alleges that a prior determination should be reopened because he suffered from a mental impairment and was not represented by counsel at the time of the denial of benefits, he has asserted a colorable constitutional claim"); Klemm v. Astrue, 543 F.3d 1139, 1144-45 (9th Cir. 2008) (discussing Udd and SSR 91-5p).  If plaintiff is unrepresented on remand, it would be appropriate for the Administration, in accordance with SSR 91-5 to assist plaintiff in obtaining any relevant evidence going to cause to reopen the prior proceedings.  See SSR 91-5p ("If the claimant is unrepresented and has one of the factors listed above [including any mental condition which limits the claimant's ability to do things for herself], the adjudicator will assist the claimant in obtaining any relevant evidence.").

Finally, based on the record before the Court, the Court has concerns regarding plaintiff's competency to represent herself in further administrative proceedings.  If, on remand, plaintiff is unrepresented, the Administration should explain to plaintiff the right to counsel and the attorney's role in great detail to

---

[10] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b) and Fed. R. App. P. 32.1(a).

13

Case 2:05-cv-05766-JC   Document 45   Filed 05/11/09   Page 14 of 14   Page ID #:448

ensure that plaintiff understands the importance of counsel.  See 20 C.F.R. § 416.1506 (explaining that Administration will inform a claimant of "options for obtaining an attorney to represent you in dealing with us" and that "a legal services organization may provide you with legal representation free of charge"); see also Judd v. Astrue, 2009 WL 481956 *9 (D. Ariz. Feb. 25, 2009) (discussing Administration's duty to inform a claimant of her right to an attorney) (quoting Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991) ("The claimant must be properly informed of [the right to counsel], but may waive it if given sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*.")).  Although the decision is not controlling, the Court notes that at least one court has found that where a claimant has such a severe mental impairment that she cannot present her case adequately, the ALJ should appoint counsel for her.  See Finney v. Schweiker, 566 F. Supp. 1541, 1543-44 (W.D. N.C. 1983).

## V.   CONCLUSION[11]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[12]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 11, 2009

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[11] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[12] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

14